Good morning, everyone. The first argued case this morning is number 2011-1533, PASTIFICIO LUCIO v. United States. Mr. Farron. If it please the Court, this is an anti-dumping case in which Commerce calculated a dumping margin for a one-year period for our client, Garofalo. At the midpoint of the period, cost of a major input spiked upwards, then leveled off and stayed at that high level for the rest of the period. Garofalo also increased its prices to customers at the midpoint in order to pass along its higher costs. So if Commerce is trying to calculate an accurate dumping margin over the entire one-year period, clearly Commerce should avoid comparing U.S. prices in the second half of the period to home market prices in the first half of the period or vice versa because it would lead to an apples-to-oranges comparison. But they didn't do that. They did it quarter-by-quarter, didn't they? That is correct. And Commerce got that part right by not dividing the first half from the second half. So what's wrong with doing it quarterly instead of semi-annually? They went too far. They essentially used an elephant gun when just a regular BB gun would do. What happened was they chopped up quarters one and quarter two when there weren't significant increases in costs and quarters three and quarter four when there was almost zero increase in costs. And as a result, they wouldn't allow matches between quarters three and quarter four sales or between quarter one and quarter two sales. And that's where our client is injured here. It's because Commerce has a rule for determining what is the best match so they can calculate the most accurate dumping margin. It's called the 90-60 rule. What they'll start with is, say for example, that you've got a home market sale in April. It's the last quarter of this period here. Rather, a U.S. sale in April. What Commerce will do is a first look to see what's the most identical match and see if there's one in April. If not April, then they'll go back one month to March. If nothing is identical in March, they'll go back one more month to February. If not then, one more month to January. If there's nothing three months before the month of the U.S. sale, then they go one month forward in May, one month forward further in June. How's that consistent with the statutory requirement of doing it on a monthly basis? Well, the statutory requirement requires a month-by-month comparison. And this is a regulation that Commerce has. And it's had for many years as far as this 90-60 rule. This is what they've done all the time. How is it consistent with the statute? Them going to the 90-60 rule? Because the statute only requires, the statute has a couple of requirements. It says it must be the most similar, identical or most similar. So that's what Commerce looks for first. And secondly, it's got to be most contemporaneous. It's got to be contemporaneous month. And this is how Commerce has filled in the gap of determining what is most contemporaneous. They've done so through their 90-60 rule, which they've done for over two decades. In any event, you're not complaining about it being inconsistent with the statute, right? Inconsistent with the statute? Yeah, the monthly requirement in the statute. We're not saying the 90-60 rule is inconsistent with the statute. What we're saying is that what Commerce is, the way Commerce has filled in these gaps is essentially arbitrary. Because what Commerce has decided to do is, they said, okay, in a situation where there is a big increase in costs, we realize we can't use just one annual period. Commerce likes to use one annual period because it smooths out any sort of random fluctuation in costs and it gets kind of smoothed over and companies base their pricing decisions on the long run. But companies also will increase their prices when there's some big event that occurs. And here, there was one big event that occurred and the big event that occurred was in the midway point of the period. That was the only big event that occurred in terms of the costs and the prices. And so what happened here is Commerce is luckily not comparing the first half to the second half. They're not comparing the sales between the time when the prices were low with the prices that were high or the costs were low with the costs that were high. But the problem is, is they're not, within each of those halves, they're not coming up with the most similar and the most contemporaneous matches. So you said luckily. Are you saying that there's an obligation on Commerce to look at the fluctuations and then to select a period which would be most favorable to the importer? Not that it's most favorable, but at least have one that's rational and non-arbitrary. That's all we're asking. What's irrational about quarter by quarter? That what's irrational about quarter by quarter is the same reason that it would be irrational for them in this case. I mean, Commerce could have, imagine if Commerce decided, okay, we can't use one annual period, so we're going to go with daily costs. In fact, in October 2010 case, they did go with daily costs. But that's not rational because that has a big downside to it. As I mentioned before, Commerce prefers a longer cost averaging period to a short cost averaging period. As explained in their May 2008 Federal Register notice where they set forth their policy. They prefer longer to shorter because it smooths out the short term fluctuations. So there's always a preference for that. And in that May 2008 policy, they said there are certain situations in which we will go to a shorter cost averaging period. It doesn't say there are situations where we will go, when we go to a shorter cost averaging period, we'll always go to a quarterly cost averaging period. All we're saying is, follow the evidence. Make the divisions where it makes sense in terms of the costs and the prices in this case. Don't just say, don't pose a false choice. Say, well, if it's not going to be annual, it's going to be quarterly and we're just not going to consider any other alternative. Why does semi-annual make more sense? It makes more sense because that's the only place where there is a big increase in prices. The prices between the second and third quarter here spiked 30 to 40%. So you are saying that they must look at how the prices change and then choose a period that, what, on what criteria? The cost, I should say, the cost increased between 30 and 40% during that period and the prices did as well. And so they know that they need to put a dividing line between the second and the third quarter. But between the third and fourth quarter you had a 1% increase in cost. So what happened is we had situations where there was a specialty cut, a U.S. sale of a specialty cut in April of 2008 that would have matched to a specialty cut using a semi-annual period. But because it's a quarterly period what Commerce did instead is they matched it to a lasagna instead. Because... It sounds like a great argument to make to Commerce which I guess you did. Yeah. But why is it our business? It's your business because it's correct that you don't want to get into the nitty-gritty details of everything Commerce does. But you do have a responsibility as a court to make sure that what Commerce doesn't do is do something completely arbitrary. Apply spec to the choices that they make? Not apply spec, but just review them for reasonability. And it's not reasonable to simply say there is no third thing, there is no turdy and quid here without giving a reason. They didn't even analyze why semi-annual is a bad thing or why that's going to be more distortive. After all, the goal here is the most accurate dumping margin possible. That's what the court has said time and time again. That's its goal. But this process, you don't always wind up with the most accurate dumping margin because you'll have a U.S. sale in April of 2008 that would normally match to a home market sale in March that can no longer match to one in March. And why? Because of a spike in prices? No! There was no spike in prices between March and April or any time between the third quarter and the fourth quarter. It's 1% increase. And it's entirely arbitrary to just say, okay, we're going to create these four artificial divisions. Look at the data. Commerce knows how to look at the data. Commerce, in some cases, does look at the data. There's an October 2010 case where Commerce chopped up the metal prices into daily cost averaging. They took the metal prices day to day to day because there was such a fluctuation. They thought, the evidence here really compels this. And we're not saying that there's no argument for saying that it doesn't compel it here, but at least deal with the evidence. And Commerce does everything except deal with the evidence here. They just simply say, well, because prices, because the prices went up overall 25% and there was no period where they decreased, then we're going to go to quarterly cost averaging and there's going to be nothing in between. Okay, let's hear from the other side, Mr. Farron. This is your rebuttal time. Ms. Moore. Good morning, Your Honors. May it please the Court, that Commerce's use of quarterly costs instead of weighted average costs for the period of review is reasonable, is supported by substantial evidence, is in accordance with the law and should be affirmed. Passoficio argues that Commerce went to a quarterly cost averaging, that it's a blanket rule, and that it didn't consider the evidence. That's not the case here. What Commerce said is that when it departs from the annual cost averaging, it has a practice of using quarters unless quarters are distortive. And there was no record evidence in this case that quarters were distortive. That's how this case differs from the brass case, which Passoficio discussed, where they went to a daily period. In that case, it was determined that quarters would be distortive and that it would be better to use days, that that was more accurate. And it's true that Commerce does have a general preference to use a longer period. And it believes that in a stable market, long periods are preferred because it smooths out differentials. But in a changing market, shorter periods are more accurate. And that's what Commerce did here. Passoficio has never shown any record evidence to show that quarters are distortive on the facts of this case. It's some hypothetical arguments about how quarters... Well, they say the price changes were between the semiannual periods and not between the quarterly periods. Well, no. As the trial court found, there were price changes across all four quarters. No, but that's what they're arguing, right? But that's not the record evidence in this case, Your Honor. There were changes. Yes. Yes. So what's wrong with the argument? What's wrong with their argument is that there were changes across all four quarters. It's true the most significant were between the second and third. But that's not the test. The test is that as long as there's a 25% difference across the annual period, then Commerce looks to a quarterly cost averaging period. I think they're saying, aren't they, that if you're going to apply 25% tests, you should look to see whether there was a 25% difference between the two quarters. And if there wasn't,  That's basically what they're saying, isn't it? That's what they're saying. But that's not what Commerce does. And as the trial court found, it's reasonable for Commerce not to do that. Because as long as there is across the year a 25% change, it's reasonable for Commerce to look on a quarter-by-quarter basis. It's reasonable for Commerce to have a practice that it uses in all cases that parties can rely on, that parties can anticipate. And that's what Commerce did here. What are the percentage changes quarter to quarter here? Between the first and... Well, if you... In the first and second. First and second quarter, it was between 16... Where are you reading from? I'm actually looking at... This is plaintiff's brief. Yeah. On page 31. He has a chart that looks at the five largest columns in this case. So it's not the five largest volume products. 31 of plaintiff's brief. Yeah. And it shows, I mean... The differences in quarters three to four are pretty minor. They are minor, but they exist. And again, the test is not that there be 25% at each quarter, that there be 25% over the year. And by going to quarters, you're capturing that. You're... You're only comparing sales within that quarter. So presumably, the small pricing... I don't think I'm saying that very clearly, but... It's certainly reasonable for Commerce to determine, because there were changes across the entire, every single quarter, even though it was small in the third, between the second and third, that it was reasonable for Commerce to use its quarters methodology. Between the third and fourth. Third and fourth, excuse me, Your Honor. So... Similarly, Commerce's comparison of U.S. sales on a quarterly instead of a 90-60 day period is also supported by a law. Commerce's regulation that defines the contemporaneous month says, normally, Commerce will look to the three months prior and then the two months subsequent. But because the regulation says, normally, it's reasonable for Commerce when it goes from its annual to its quarterly cost methodology to limit the comparisons to sales within that quarter. And that's what the trial court found and we would reasonably request that you affirm Commerce's findings in this case. If the court has no further questions, we rest upon our break. Thank you, Mr. McClure. Mrs. Smith, do you wish to argue? May it please the court, Your Honors, unless you have any questions for me, I'm not going to make any presentation at this point. Okay. Unless you'd like me to answer any questions, I'd be happy to do that. I thought government counsel answered all of the salient points. Thank you, Mrs. Smith. Mr. Farron, do you have any rebuttal time? Let me address a few of the points that the government just made. They said, first of all, it's reasonable because there were changes across all four quarters. So if I'm understanding them correctly, they are saying that, you know, say, hypothetically, that you had this big increase like we had, 30 to 40 percent between quarters two and three, but between quarters three and four, instead of a 1 percent increase, you had a 1 percent decrease. By commerce's logic, they wouldn't have quarterly costs at all. They wouldn't have semi-annual costs at all. They would just have one annual cost. I think that's intuitively unreasonable as well. I don't understand them to be saying that. I think what they're saying is we're going to depart from the annual approach if there's a 25 percent difference, and then when we're deciding whether to use quarterly or semi-annually or something else, we're going to see whether there's any difference. We're not going to say that between quarters three and four, we have to find a 25 percent difference in order to the quarterly. We're saying that any difference is enough. So what's wrong with that? What's wrong with it is you're not looking at the commerce is blinding itself to what the evidence is. I would agree that if there was one linear change, 25 percent from the beginning of the period of review to the end of the period of review, that's fine. Go to quarterly costs. I have no problem with that. But that's not what happened here. It wasn't one gradual increase. It was, it shot up. It shot up at the midway point. So what you're giving up is not, what you're giving up to go to quarterly cost averaging is not worth the price that you pay in less accurate matches and less contemporaneous matches. And it's totally needless because you can eliminate your concern about fluctuating costs by just having one semiannual period. And that's what we're saying is unreasonable. The fact that they say, well, it's just going to be, you know, once we've decided to go to shorter cost averaging period, it's going to be quarterly. That's what they're saying. Now, keep in mind that the regulation doesn't say that. In fact, the May 2008 notice doesn't say that. They claim now that, well, that's our policy that we'll go to quarterly specifically. But if you look at the actual May 2008 notice where they set forth their policy, it says using shorter cost averaging periods. It doesn't say using quarterly cost averaging periods. Commerce, in its wisdom, decided to limit, to give it self-discretion to consider the facts of the case. And all this really boils down to is commerce needs to look at the facts of the case. And commerce knows how to do this. Commerce did this in the second half of the CIT opinion on a different issue. Commerce does this, did this in the case of the situation where there were, where there was a, there were monthly, there was a daily, they chopped the cost into daily costing periods in the brass sheet and strip case. Now, commerce also says, well, our policy is we go to quarterly unless it's distortive. But the thing that they don't ever explain is even if you believe that that's really what their policy is, that's not what it says in the May 2008 notice. And this May 2008 notice came out just three months before this period of review began. But also, how do you define distortive? Our point is it is distortive when you don't get the most contemporaneous matches and you don't get the most similar matches. That's what the statute requires and that's what the 90-60 rule is all about. That's the source of the distortion. And I don't know what else they want from us. Now, the Court of International Trade below seemed to say, well, give us specific examples. We were prepared to give them specific examples. I'd be prepared to give the court specific examples now. We gave one example where you had a macaroni bean compared to lasagna. Why? Because there was this artificial division between the third and the fourth quarter. And we'd be glad to give you all the examples you want, but I don't think that's what the court needs to make, needs to look at to make its decision here on whether it's rational. Thank you, Mr. Farron. Thank you, Ms. Dunsmore, Mr. Smith. The case is taken under submission.